# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

J.P. MORGAN SECURITIES INC. and BEAR,
STEARNS & CO. INC. (N/K/A J.P. MORGAN
SECURITIES INC.),

                               Plaintiffs,

                vs.

LOUISIANA CITIZENS PROPERTY
INSURANCE CORPORATION,

                          Defendant.

------------------------------------------------------------x

Case No. _____



## COMPLAINT

Plaintiffs J.P. Morgan Securities Inc. ("J.P. Morgan Securities") and Bear, Stearns & Co. Inc., now known as J.P. Morgan Securities Inc. ("Bear Stearns", and collectively, "Plaintiffs"), by their attorneys, Simpson Thacher & Bartlett LLP, for their complaint against Defendant Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens"), respectfully allege as follows:

### NATURE OF ACTION

1.      This is an action to enjoin an arbitration that defendant Louisiana Citizens initiated against Plaintiffs before the Financial Industry Regulatory Authority ("FINRA") on December 18, 2009, captioned *Louisiana Citizens Property Insurance Corporation v. J.P. Morgan Securities, Inc. and Bear, Stearns & Co., Inc.*, FINRA No. 09-07085 (the "FINRA Arbitration"). The claims at issue here are contained in Louisiana Citizens' Statement of Claim, attached hereto as Exhibit A.

2.      In the FINRA Arbitration, Louisiana Citizens seeks to recover certain

interest payments that it made in connection with auction rate securities ("ARS") it issued in 2006 and to recover certain interest payments that it has made and expects to make on fixed rate debt issued in April 2009 to purportedly refinance the outstanding ARS. These purported damages stem from Louisiana Citizens' allegation that derivative transactions that Louisiana Citizens executed with JPMorgan Chase Bank, N.A. ("JPMorgan Chase Bank") and Bear Stearns Capital Markets Inc. ("BS Capital") at or around the time of the ARS issuance did not effectively cap its interest rate payments as Louisiana Citizens hoped they would.

       3.      Because Louisiana Citizens is not a customer of Bear Stearns or J.P. Morgan Securities and because the FINRA Arbitration is based upon a dispute concerning an agreement with entities that are not FINRA members, FINRA has no jurisdiction over the dispute and this Court should declare that the dispute is not arbitrable and enjoin the FINRA Arbitration.

       4.      Louisiana Citizens' claims should be heard, if at all, in federal court. In tacit recognition of this fact, only four days after filing its Statement of Claim with FINRA (the "Statement of Claim"), Louisiana Citizens filed an almost identical complaint in the United States District Court for the Eastern District of Louisiana, captioned *Louisiana Citizens Property Insurance Corporation v. J.P. Morgan Securities, Inc. and Bear, Stearns & Co., Inc.*, No. 09-7764 (the "Louisiana Action"). Plaintiffs (Defendants in the Louisiana Action) have not yet been served in the Louisiana Action.[1]

**THE PARTIES**

---

[1]    On March 5, 2010, Plaintiffs, along with certain affiliated entities, filed a Motion to Transfer and Coordinate Pursuant to 28 U.S.C. § 1407 with the Judicial Panel on Multidistrict Litigation which, among other things, sought to transfer the Louisiana Action to the Southern District of New York where it would be centralized with other actions relating to ARS.

5.      Plaintiff J.P. Morgan Securities Inc. is a corporation incorporated in Delaware, with its principal place of business in New York, New York.

6.      Plaintiff Bear, Stearns & Co. Inc. is now known as J.P. Morgan Securities Inc.  On October 1, 2008, J.P. Morgan Securities Inc. merged with and into Bear, Stearns & Co. Inc. under the name of Bear, Stearns & Co. Inc.  Effective October 1, 2008, Bear, Stearns & Co. Inc. changed its name to J.P. Morgan Securities Inc.

7.      Defendant, Louisiana Citizens Property Insurance Corporation, is, upon information and belief, a non-profit corporation incorporated in Louisiana, with its principal place of business in Metairie, Louisiana.

## JURISDICTION & VENUE

8.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Federal Rule of Civil Procedure 57 and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Specifically, the FINRA Arbitration seeks "tens of millions of dollars of damages."

10.     This Court has personal jurisdiction over Louisiana Citizens because this lawsuit arises out of specific activities undertaken by Louisiana Citizens within the Southern District of New York, including, but not limited to, attendance by officers and representatives of Louisiana Citizens at numerous in-person meetings with bond insurers and credit rating agencies related to its issuance of variable and fixed rate bonds in 2006.  The purpose of these meetings was to solicit and procure policies to insure the ARS bonds and obtain credit ratings on the

bonds, respectively.  Louisiana Citizens also participated in numerous telephone calls with one or more parties in the Southern District of New York.  During these calls, as well as during the in-person meetings with bond insurers and credit rating agencies, the parties covered issues concerning the structure of the bond transactions and the Derivative Transactions (defined below).  Moreover, pursuant to the Master Agreements (defined below), Louisiana Citizens agreed to submit to the jurisdiction "of the courts of the . . . United States District Court located in the Borough of Manhattan in New York City" with respect to "any suit, action or proceedings relating to" the agreement.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because Plaintiffs are located in this judicial district and a substantial part of the events giving rise to this lawsuit occurred within this judicial district.

## FACTUAL BACKGROUND

### The April 2006 Bond Issuance

12.     Louisiana Citizens was created by the legislature of the State of Louisiana effective January 1, 2004 to operate the property insurance residual market programs and to provide property insurance for commercial and residential properties in Louisiana.

13.     As a result of Hurricanes Katrina and Rita in 2005, Louisiana Citizens lacked sufficient assets to fund claims made by customers in connection with these hurricanes. Louisiana Citizens issued nearly $1 billion of bonds in April 2006 to raise funds.

14.     Specifically, Louisiana Citizens issued approximately $300 million of ARS and approximately $700 million of fixed-rate bonds.  J.P. Morgan Securities and Bear Stearns served as underwriters for the issuances.

15.     The bonds were underwritten pursuant to two Bond Purchase Agreements

dated April 5, 2006 and April 10, 2006, respectively, by and between Louisiana Citizens and J.P. Morgan Securities (on behalf of itself and a syndicate of underwriters) (the "Bond Purchase Agreements"). The Bond Purchase Agreements did not provide any right to arbitrate disputes arising out of the agreements.

16.    In connection with Louisiana Citizens' April 2006 bond issuance, it hired Government Consultants of Louisiana, Inc. and Government Finance Associates, Inc., which is based in New York, as its financial advisors.

17.    Louisiana Citizens did not maintain any brokerage accounts with J.P. Morgan Securities or Bear Stearns.

18.    Louisiana Citizens did not sign any agreements that created a broker-customer relationship with J.P. Morgan Securities or Bear Stearns.

19.    Neither J.P. Morgan Securities nor Bear Stearns provided any investment advice to Louisiana Citizens.

**The Derivative Transactions**

20.    At or around the time of the bond issuance, Louisiana Citizens executed separate ISDA Master Agreements (the "Master Agreements") with JPMorgan Chase Bank and BS Capital. Neither JPMorgan Chase Bank nor BS Capital is (or ever was) a FINRA member and neither is named as a defendant in the FINRA Arbitration.

21.    Louisiana Citizens entered into two derivative transactions with JPMorgan Chase Bank and BS Capital pursuant to the respective Master Agreements (the "Derivative Transactions"). The Derivative Transactions were evidenced by (1) a confirmation executed by Louisiana Citizens and JPMorgan Chase Bank, dated April 7, 2006 and bearing the confirmation number 0500085007660; and (2) a confirmation executed by Louisiana Citizens and BS Capital,

dated April 7, 2006 and bearing the confirmation number CXNC181776 (together, the "Swap Confirmations").

       22.     The Derivative Transactions provided that if the USD-BMA (now SIFMA) Municipal Swap Index ("BMA Index") rose above a predetermined rate (5% through December 1, 2008 or 6% from December 1, 2008 through June 1, 2016) JPMorgan Chase Bank and BS Capital would pay to Louisiana Citizens the difference between the BMA Index and 5% and 6%, respectively. In return, Louisiana Citizens agreed to pay an annual fixed fee to JPMorgan Chase Bank and BS Capital.

       23.     Neither the Master Agreements, nor the Swap Confirmations, provided the parties with the right to arbitrate disputes arising out of the Derivative Transactions.

       24.     The Master Agreements include choice of law provisions providing that the agreements are governed by New York law.

**The FINRA Arbitration**

       25.     On December 18, 2009, Louisiana Citizens filed a Statement of Claim with FINRA, instituting arbitration proceedings against Plaintiffs. Plaintiffs' answer to Louisiana Citizens' Statement of Claim is currently due on April 23, 2010.

       26.     In the FINRA Arbitration, Louisiana Citizens alleges that beginning in January 2008, the interest rates on its outstanding ARS increased and that the Derivative Transactions did not effectively "cap" the interest rate that Louisiana Citizens paid at 5% or 6% as they purportedly were designed to do. Louisiana Citizens seeks damages equal to (1) the difference between interest that it paid on the ARS and 5% through December 1, 2008; and (2) the difference between the interest it paid on the ARS and the interest it has paid and will pay on the fixed-rate debt it issued in April 2009 (to purportedly refinance its outstanding ARS) and 6%

from December 1, 2008 through June 2016.  It also seeks to be compensated for the fees it paid

to issue the fixed-rate debt in April 2009 and seeks the return of all commissions and fees paid to

Plaintiffs in connection with the issuance of, and the auctions for, the ARS bonds.

      27.    Accordingly, the FINRA Arbitration primarily relates to Louisiana

Citizens' claims that the Derivative Transactions, which were not executed by Bear Stearns or

J.P. Morgan Securities, did not work as intended.  Specifically, although the terms of the

transactions made clear that the Derivative Transactions would not absolutely or perfectly "cap"

Louisiana Citizens' interest rates, Louisiana Citizens' claims are based on the failure of the

Derivative Transactions to act as an absolute cap on its interest rates.

      28.    Louisiana Citizens' Statement of Claim in the FINRA Arbitration does not

allege that Louisiana Citizens: (i) opened or maintained an account with Plaintiffs; (ii) executed a

customer agreement or arbitration agreement with Plaintiffs; (iii) purchased or placed any of the

securities at issue with Plaintiffs; or (iv) suffered any losses in any J.P. Morgan Securities or

Bear Stearns account.

      29.    Instead, the Statement of Claim conclusorily alleges that Louisiana

Citizens is a "customer" and that the dispute arises from the business activities of J.P. Morgan

Securities and Bear Stearns, "including but not limited to underwriting and broker-dealing."  The

Statement of Claim does not allege that Louisiana Citizens is or was an investor with Plaintiffs or

that its relationship with Plaintiffs involved investment or brokerage services.

## CAUSES OF ACTION

### COUNT I

#### (For a declaratory judgment)

      30.    Plaintiffs repeat and reallege paragraphs 1 through 29 as though fully set

forth herein.

31.     Plaintiffs have not agreed to arbitrate any dispute with Louisiana Citizens.

32.     Pursuant to Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes, which governs the arbitrability of disputes by a FINRA arbitration panel, parties must arbitrate disputes only where each of the following conditions are met: (1) arbitration is either (a) required by agreement or (b) requested by the customer; (2) the dispute is between a customer and a member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person.  These conditions are not met with respect to the dispute between Plaintiffs and Louisiana Citizens in connection with which Louisiana Citizens commenced the FINRA Arbitration.

33.     Plaintiffs have not entered into any agreements with Louisiana Citizens pursuant to which they agreed to arbitrate any disputes.

34.     Louisiana Citizens is not a "customer" of J.P. Morgan Securities or Bear Stearns, as that term is used in FINRA Rule 12200 and is also not a customer of an "associated person" of J.P. Morgan Securities or Bear Stearns.  Accordingly, its dispute is not arbitrable.

35.     The dispute is also not arbitrable because it does not arise "in connection with the business activities" of a FINRA member or an "associated person."  Instead, the dispute is essentially a contract dispute that arises out of the business activities of JPMorgan Chase Bank and BS Capital, neither of which is a FINRA member or an "associated person" of a FINRA member.  The FINRA rules are clear that the definition of associated persons does *not* include corporate entities and only refers to "natural persons."  *See* Rule 12100(r) and FINRA Regulatory Notice 09-74.

36.     Plaintiffs are compelled to seek relief in this Court, because (i) the FINRA

Arbitration Panel is not authorized to compel Louisiana Citizens to demonstrate that the dispute is in fact arbitrable prior to arbitration (*see* FINRA Rule 12504(a)); and (ii) it is the Court and not the arbitrator that can determine the arbitrability of Louisiana Citizens' claims.  In any event, because arbitration is a creature of contract and Plaintiffs have not agreed to submit either the merits of this dispute *or its arbitrability* to an arbitral panel, the panel has no authority to decide the arbitrability of this dispute.

37.     Declaratory relief from this Court will resolve these controversies and limit the uncertainties.

38.     As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties.  Plaintiffs, therefore, request a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure that Plaintiffs have no obligation to arbitrate Louisiana Citizens' claims before FINRA.

## COUNT II

(For an injunction prohibiting Louisiana Citizens from pursuing the FINRA Arbitration)

39.     Plaintiffs repeat and reallege paragraphs 1 through 38 as though fully set forth herein.

40.     Louisiana Citizens has asserted claims for money damages against Plaintiffs in the FINRA Arbitration and, on information and belief, unless enjoined will continue to pursue such claims to judgment.

41.     Unless Louisiana Citizens is enjoined from pursuing its claims in the FINRA Arbitration, Plaintiffs will suffer irreparable harm because Plaintiffs will be forced to incur the expense of defending themselves in the arbitration proceeding or risk an adverse

outcome in those proceedings, in which Louisiana Citizens seeks tens of millions of dollars in compensatory and punitive damages, even though Plaintiffs are not legally compelled to arbitrate these claims. Being compelled to arbitrate a dispute one has not agreed to arbitrate constitutes irreparable harm as a matter of law.

42. Plaintiffs have no adequate remedy at law because any post-arbitration challenge by Plaintiffs to an arbitrator's award would still require Plaintiffs to defend themselves in an arbitration proceeding to which they did not consent, and because submitting this dispute to arbitration would prejudice Plaintiffs' position regarding the dispute's arbitrability.

43. Louisiana Citizens will suffer no irreparable harm in the event an injunction issues.

44. The balance of equities weighs in favor of an injunction.

45. The public interest would be served by enjoining Louisiana Citizens from pursuing its claims against Plaintiffs in the FINRA Arbitration when Plaintiffs are not legally bound to arbitrate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order:

(1) declaring that (a) Louisiana Citizens is not a customer of J.P. Morgan Securities or Bear Stearns; (b) the parties' dispute does not arise out of the business activities of JPMorgan or Bear Stearns; and (c) FINRA has no jurisdiction to arbitrate the FINRA Arbitration;

(2) preliminarily and permanently enjoining Louisiana Citizens from pursuing any claims against Plaintiffs in the FINRA Arbitration;

(3) awarding Plaintiffs' costs of suit; and

(4)    granting such other relief as may be just and proper.


Dated:  March. 19, 2010
        New York, New York

By: _____

SIMPSON THACHER & BARTLETT LLP
Thomas C. Rice
Jonathan K. Youngwood
425 Lexington Avenue
New York, NY  10017
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502
email:    trice@stblaw.com
          jyoungwood@stblaw.com

*Attorneys for Plaintiffs*